IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY G.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:22-cv-00464-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Jeffrey G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND[2]

Born in 1957, plaintiff alleges disability beginning March 15, 2019, due to back pain, sarcoidosis, arthritis, fatigue, high cholesterol, and thyroid issues. Tr. 200. His application was denied initially and upon reconsideration. On March 2, 2021, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 30-52. On March 24, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-25. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 16. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease of the lumbar spine, sarcoidosis, and obesity." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except:

> [H]e can lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk for 6 hours, sit for 6 hours in an 8-hour work day, frequently stoop, kneel, crouch, and crawl, and constantly climb and balance. He should avoid work with

---

[2] The record before the Court constitutes nearly 600 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

Page 2 – OPINION AND ORDER

concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, and gases.

Tr. 17.

At step four, the ALJ determined plaintiff was capable of performing his past relevant work as an auto body repairer. Tr. 22. Alternatively, at step five, the ALJ found that plaintiff could perform a significant number of jobs in the national economy despite his impairments, such as kitchen helper, janitor, and night cleaner. Tr. 23-24.

## DISCUSSION

Plaintiff argues the ALJ erred in regard to: (1) the medical opinion of treating nurse practitioner Laura Johnson; and (2) his subjective symptom testimony.

## I.      Medical Opinion Evidence

Plaintiff asserts the ALJ improperly discredited the opinion of Ms. Johnson. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[3] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to

---

[3] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

Page 3 – OPINION AND ORDER

necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

Plaintiff initiated care with Ms. Johnson in October 2019 concerning his "history of Blurry vision, left eye, Cataract, Hyperthyroidism, Nocturia, Sarcoidosis, and Sleep disorder breathing." Tr. 451. During Ms. Johnson's initial review of plaintiff's systems, he admitted "limitation of motion, muscle cramps, neck pain, low back pain, foot pain" but denied "joint pain, joint swelling, muscle pain, muscular weakness, back pain, shoulder pain, elbow pain, wrist pain, hip pain, knee pain, ankle pain." Tr. 452. On exam, plaintiff "present[ed] with no acute medical concerns" and did not request any medication refills or specific follow-up treatment. Tr. 454.

The following month, plaintiff returned to Ms. Johnson to review his recent lab work. Tr. 448. Plaintiff denied back pain and "present[ed] with no acute medical concerns." Tr. 449-50. He was instructed to drink more water based on the results of his blood test. Tr. 450.

In February 2020, plaintiff sought treatment from Ms. Johnson for a lingering upper respiratory infection. Tr. 444. Two months later, he "present[ed] for [a] well-visit [with] no acute concerns." Tr. 441. Back pain, headaches, dyspnea, and blurry vision were noted as historical and/or current symptoms. Tr. 441-42. Plaintiff was instructed to "return to clinic in 1 year for [his next] annual preventive exam." Tr. 443.

In December 2020, plaintiff first "complain[ed] of chronic back pain." Tr. 555. The "subjective" portion of Ms. Johnson's chart note states:

> Patient reports that many years ago he was in an accident which heavy lead lined doors collapsed on him and he suffered 3 herniated disks. Patient . . . also suffered further injury during an MVA more than 6 years ago and since that time he has been experiencing daily chronic low back pain. Patient admits to some degree of weakness in his legs, he denies numbness. Patient reports he can sit for approximately 1 hour and can stand for approximately 30 minutes otherwise he is constantly moving positions to find a comfortable position. Patient reports his pain is currently 5 of 10, pain increases with bending, stooping, walking and long drives.

Page 4 – OPINION AND ORDER

> Patient reports stairs and supine sleep to not increase his bad pain. Patient has a hearing with his attorney for social security disability insurance in March and is needing workup of his low back pain issues.

*Id.* On exam, plaintiff had no tenderness and a full range of motion, however, he did exhibit some weakness in his lower extremities. Tr. 556. Accordingly, Ms. Johnson recommended a nerve conduction study. *Id.*

In January 2021, Jeffrey Solomon, D.O., completed the nerve conduction study. Tr. 53. Plaintiff reported bilateral low back pain "since the 1980s" that "is constant and does not radiate to lower limbs . . . he was hit by a slow-moving car at work about 3 years ago, had some physical therapy at that time. He is trying to obtain disability benefits." *Id.* In terms of objective testing, Dr. Solomon noted plaintiff "had relatively unremarkable lumbar Xrays in 2019" and that he "did not find any weakness or other neurologic findings [upon exam and] EMG and nerve conduction studies were negative for active radiculopathy." Tr. 53-55. Dr. Solomon concluded plaintiff was not a surgical candidate and instead recommended additional imaging, "physical therapy and referral to an interventional pain or regenerative medicine clinic for possible injections." Tr. 56.

On February 9, 2021, plaintiff met with Ms. Johnson to review the nerve conduction study results. Tr. 552. On exam, plaintiff had normal strength but a limited range of motion in his lumbar spine. *Id.* Ms. Johnson ordered additional imaging. Tr. 553.

On February 25, 2021, plaintiff returned to Ms. Johnson to "follow-up on repeat lumbar radiographs including flexion and extension films" and have his "disability paperwork completed." Tr. 570. On exam, plaintiff had no tenderness and a full range of motion, but some weakness in his lower extremities. *Id.* Ms. Johnson indicated that "next steps for [plaintiff] would be MRI as well as a trial of physical therapy, patient is not interested in surgical intervention however he

would be willing to try physical therapy." *Id.* He was instructed to come "back in 6-8 weeks to assess progress." *Id.*

That same day, Ms. Johnson completed a "Treating Source Statement" at the request of plaintiff's attorney. Tr. 564. Ms. Johnson opined, in relevant part, that plaintiff was "limited to sitting no longer than 1 hour and stand[ing] no longer than 30 minutes," and needed to change positions frequently. Tr. 565. She explained that her opinion was based on imaging and nerve conduction studies, and plaintiff's decreased lower extremity strength on exam. *Id.* In terms of treatment, Ms. Johnson reported that plaintiff was taking oxycodone and ibuprofen, and was deferring physical therapy to obtain an MRI. Tr. 566.

The ALJ found Ms. Johnson's assessed limitations "unpersuasive because they are not consistent with her own treatment records, and are not consistent with the record as a whole." Tr. 22. The ALJ's discussion of Ms. Johnson's opinion is as follows:

> First, she said these limitations were present since she started treating the claimant in October 2019. However, he did not begin complaining of back pain until December 2020. Although his physical exams with Ms. Johnson have shown him to have decreased strength in his lower extremities at +3/5 at times, and decreased lumbar flexion and extension at times, these signs were not present simultaneously. When he had decreased strength, he had normal range of motion. When he had normal strength, he had decrease range of motion. Otherwise, his physical exams showed he had normal gait, sensation, and reflexes. X-rays of his lumbar spine have also only shown mild degenerative changes. Nerve conduction studies suggest old right L5 radiculopathy, but showed no indication of active radiculopathy. Ms. Johnson's opinions are extreme in light of these minimal objective findings. Lastly, Ms. Johnson's opinion[s] are inconsistent with the numerous normal physical exams by his treating providers, and the benign physical exam by consultative examiner Dr. Woodrum in July 2019, which showed only muscle spasm and decreased range of motion of the lumbar spine.

*Id.* (internal citations omitted). In a separate portion of the opinion, the ALJ also noted that plaintiff was "prescribed Oxycodone, but it was for kidney stones, not his back pain." Tr. 19.

Page 6 – OPINION AND ORDER

Here, the ALJ's decision was based on the proper legal standards and is supported by substantial evidence. That is, an ALJ may reject a medical opinion that is inconsistent with the medical record, including the provider's own treatment notes. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).

As discussed herein, an independent review of the medical record does not reveal any treatment for back pain (including with Ms. Johnson) from the alleged onset date of March 2019 through December 2020.[4] During that time period, physical examinations with all other treating providers were unremarkable – i.e., no tenderness, normal gate, normal range of motions, etc. *See, e.g.*, Tr. 315, 321, 331, 413, 417, 424, 517, 522, 528, 562.

Objective imaging from July 2019 revealed "[m]ild L5-S1 degenerative disc height loss [and] [n]ormal alignment." Tr. 329. Follow-up imaging from July 2020 and February 2021 was essentially unchanged. Tr. 511-12, 570.

The only physical assessment on file – performed by Jaqueline Woodrum, D.O., in July 2019 – reflected back pain since 1986, sarcoidosis since the 1990s, thumb arthritis since 2015, and thyroid disease and fatigue since 2016. Tr. 345-46. Plaintiff exhibited a normal gait, muscle strength, and reflexes, but a somewhat limited range of motion in his back while rotating, flexing forward, and extending. Tr. 348-52. Accordingly, Dr. Woodrum opined that plaintiff had "mild" limitation in bending and squatting but otherwise endorsed no restrictions. Tr. 353.

In sum, plaintiff's objective findings predated his first complaint of back pain to Ms. Johnson by more than one year, the nerve conduction study results were not indicative of any new

---

[4] The only treatment records for back pain significantly pre-date the alleged onset date – i.e., October/November 2017 chiropractic records stemming from a motor vehicle accident. Further, these records indicate that plaintiff's lower back pain was essentially resolved with treatment. Tr. 455-83.

Page 7 – OPINION AND ORDER

limitations, the overwhelming majority of physical examinations did not reveal any significant deficits, and Ms. Johnson's attested limitations precisely match plaintiff's self-reports (which, as addressed in Section II, are not consistent with the medical evidence). Although plaintiff proffers a differing interpretation of the medical evidence, the ALJ's interpretation was nonetheless reasonable such that it must be upheld. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

II.     **Plaintiff's Testimony**

Plaintiff next contends the ALJ erred by discrediting his testimony concerning the extent of his physical impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL

1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff explained that he stopped working in March 2019 because "[t]hey were restructuring the employment [and] let me go." Tr. 40. He stated further that he would have continued working "[f]or a time" if his employer had not restructured, but he did take "a lot of breaks" because it "was getting hard for [him to lift the] heavy stuff." Tr. 40, 42.

He testified he was currently unable to work due to lower back pain. Tr. 42, 47. Plaintiff iced his back on-and-off throughout the day and cited fatigue as a limiting factor, "[p]robably [from] the constant pain." Tr. 45, 47. Plaintiff also endorsed "frequent" headaches that lasted an hour and were treated with Tylenol; he was able to "work through them" and they did not impair his focus or concentration most of the time. Tr. 43. Regarding his sarcoidosis, plaintiff testified that he was able to walk 100 yards before needing to stop and catch his breath. Tr. 43-44. He stated that the chart notes from his pulmonary specialist reflecting that he could walk up four flights of stairs were not accurate because he would have a "hard time" and "get tired." Tr. 44. In terms of daily activities, plaintiff stated: "I don't do nothing if it's heavy lifting, but I have to watch how I do things." Tr. 41. When asked to estimate what amount of weight he could comfortably lift and carry occasionally throughout the day, plaintiff responded "20 pounds, 25 maybe." Tr. 45.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are

not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 18. In particular, the ALJ cited to plaintiff's failure to seek treatment for his allegedly disabling back impairment, the minimal objective findings, and his history of conservative treatment.[5] Tr. 18-20.

Notably, the ALJ found that plaintiff "began complaining of back pain in October 2017, after he was struck by a coworker driving a car into the bay of the shop [but] did not receive any further treatment for his back pain until December 2020" – i.e., nearly two years after the alleged onset date. Tr. 18. "[A]n unexplained, or inadequately explained, failure to seek treatment" is a clear and convincing reason to reject subjective symptom testimony and, as denoted in Section I, that reason is supported by substantial evidence in this case. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ also observed plaintiff's physical examinations were unremarkable and that plaintiff acknowledged during Dr. Woodward's assessment that he was not taking any medications for his back pain. Tr. 18-19. The record reflects that, when Ms. Johnson did eventually prescribe stronger pain medication in February 2021, it was to treat plaintiff's kidney stones as opposed to

---

[5] Plaintiff's brief does not specify which testimony the ALJ allegedly wrongfully rejected and instead argues that the ALJ erred by "support[ing] her boilerplate finding with a selective summary of the medical record and a focus on essentially normal findings." Pl.'s Opening Br. 12 (doc. 18). As an initial matter, the Court does not find that the ALJ engaged in impermissible cherry-picking in this case. As addressed in Section I, there is simply a dearth of medical evidence surrounding plaintiff's allegedly disabling back pain. *See* Tr. 36 (plaintiff's counsel acknowledging at the hearing that "[t]here hasn't been objective testing that helps support finding his limitations to be reasonable that he is reporting"); *see also* Tr. 47-48 (plaintiff testifying his medical providers are still "figuring . . . out" the basis of his current symptoms and that he had not yet had any follow-up back imaging). And the evidence surrounding plaintiff's sarcoidosis supports the ALJ's decision. Moreover, as the Commissioner denotes, the ALJ need not recite "magic words" as the "reviewing court [is] not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." Def.'s Resp. Br. 11-12 (doc. 20) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)).

his back pain. Tr. 549, 551. "[W]hether the alleged symptoms are consistent with the medical evidence" and the type and dosage of the claimant's medications are relevant considerations. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted).

Finally, the ALJ pointed to the fact that the three imaging studies in the record "showed mild L4-L5 and L5-S1 degenerative disc disease." Tr. 20. Although even "mild degenerative disc disease can have disabling effects," the cases that have found error in this context have generally based that error on records containing other objective findings indicative of more severe impairment or that document consistent pain complaints and/or additional modalities of treatment. *Dahl v. Comm'r*, 2015 WL 5772060, *4-5 (D. Or. Sept. 30, 2015) (collecting cases). Plaintiff here had the same level of objective impairment throughout the adjudication period, but did not present with severe pain complaints until he "need[ed] workup of his low back" for his "hearing with his attorney for social security disability insurance." Tr. 555. Indeed, at the hearing plaintiff indicated that he would have continued working had he not been laid off. Tr. 40-42. Therefore, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 13th day of April, 2023.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 11 – OPINION AND ORDER